

**IT IS ORDERED as set forth below:**

**Date: November 13, 2025**

_____

**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **In Re:** | **CASE NO. 25-53640-PMB** |
| **GLOBAL CONCESSIONS, LLC** | **CHAPTER 11** |
| **Debtor.** | |

**ORDER (A) APPROVING SALE MOTION AND ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) GRANTING DEBTOR'S MOTION TO ASSUME UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon consideration and a hearing on the *Debtor's Motion for an Order (I) Approving Bid Procedures for the Sale of Debtor's Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Doc 233] (the "**Sale Motion**") filed on September 22, 2025, the

Court entered the *Order Granting Debtor's Motion for an Order (I) Approving Bid Procedures for the Sale of Debtor's Assets, (II) Scheduling Hearings and Objection Deadlines with Respect to the Sale, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief* [Doc. 242] entered October 7, 2025 (the "**Bid Procedures Order**"), authorizing the Debtor to conduct an auction (the "**Auction**") to select the one or more buyer(s) to purchase the Debtor's assets, and for the Auction to be governed by the bid procedures (the "**Bid Procedures**") approved pursuant to the Bid Procedures Order (attached as Exhibit 1 to the Bid Procedures Order); and the Court having established November 10, 2025 as the date of the hearing on the sale of the Debtor's assets (the "**Sale Hearing**"); and during the Sale Hearing the Court also having heard the *Debtor's Motion to Assume Unexpired Leases* [Doc. 285] filed October 29, 2025, (the "**Motion to Assume**" collectively with the Sale Motion the "**Motions**"); and the Court having jurisdiction to consider these matters and the relief requested therein in accordance with 28 U.S.C. §§ 157(b) and 1334; and in consideration of the Motions, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections to the Motions (if any) having been duly noted in the record of the Sale Hearing, and all other pleadings and proceedings in this chapter 11 case, including the Sale Motion and the certificates of service regarding the Sale Motion [Doc. 237 filed September 26, 2025, Doc. 238 filed September 26, 2025, Doc. 243 filed October 8, 2025], and it appearing that the relief requested in the Motions is in the best interests of the Debtor, its estate, its stakeholders, and all other parties in interest; and after due deliberation and sufficient cause appearing therefore:[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Motion, the Motion to

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT**:[2]

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the Sale Assets to be sold, transferred, or conveyed pursuant to the Agreement (defined below), pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case and the Motions in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein and the closing of all transactions contemplated hereby without regard to any stay or delay in its implementation.

D.      The statutory and legal predicates for the relief requested in the Motions and for the approvals and authorizations herein are (i) Sections 105, 363, and 365 of the Bankruptcy Code, and (ii) Bankruptcy Rules 2002, 6004, 6006, 7052, and 9014.

---

Assume, or the Bidding Procedures Order, as applicable.

[2] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

E.    On April 2, 2025 (the "**Petition Date**"), the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Since the Petition Date, the Debtor has continued in possession of its property and has operated and managed its affairs as debtor-in-possession and no trustee or examiner has been appointed in this case. On May 8, 2025, an official committee of unsecured creditors (the "**Committee**") was appointed [Doc. 96].

F.    As evidenced by the certificates of service filed with the Court [Doc. 237 filed September 26, 2025, Doc. 238 filed September 26, 2025, Doc. 243 filed October 8, 2025] adequate, and sufficient notice of the Sale Motion, the Auction, and the Sale Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order. The Debtor also gave due and proper notice of the assumption, assignment, and sale of each contract or lease listed on the *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. 250] filed October 10, 2025 which was later amended to include one additional contract in the *Amended Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. 259] filed October 22, 2025. The *Order Granting Debtor's Motion for Expedited Hearing and Notice of Hearing on the Debtor's Motion to Assume Unexpired Leases* [Doc. 296] was entered October 31, 2025, notifying parties that the hearing on the assumption of certain unexpired leases would occur at the same time as the Sale Hearing. Such notice was good and sufficient and appropriate under the circumstances. Moreover, to provide additional notice, the Debtor also filed a *Notice of Auction* [Doc. 278] on October 28, 2025, and a *Notice of Results of Auction* [Doc 301] on November 5, 2025. No other or further notice of the Sale Motion, the Bidding Procedures, the Auction, the Sale Hearing, the

assumption and assignment of the Assumed Contracts, or the entry of this Order is necessary or shall be required.

G.      A reasonable opportunity to object or be heard regarding the requested relief in the Motions has been afforded to all interested persons and entities, including, without limitation, all creditors on the mailing matrix in this case, all parties who have requested notice under Bankruptcy Rule 2002, the Committee and the United States Trustee. Other parties interested in bidding on the Sale Assets were provided, pursuant to the Bidding Procedures Order, sufficient information to make an informed judgment on whether to bid on the Sale Assets.

H.      The Sale Assets are property of the Debtor's estate, and title thereto is vested in the Debtor's estate within the meaning of Section 541(a) of the Bankruptcy Code. The Sale Assets include the following property owned by the Debtor: (a) all assets with respect to Concourse C of Hartsfield-Jackson Atlanta International Airport other than the excluded assets identified in the Agreement (defined below) (b) all assets with respect to Concourse B/F of Hartsfield-Jackson Atlanta International Airport other than the excluded assets identified in the Agreement; (c) all Assumed Contracts identified in the Agreement; and (d) all other assets identified in the Agreement.

I.      The Debtor has demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring it to enter into the Agreement and sell the Sale Assets, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate, parties in interest, and other stakeholders.

J.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive and substantively and procedurally fair to all parties and parties in interest.

K.       The Debtor and its professionals have complied, in good faith, in all respects with the Bidding Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Sale Assets, and (c) considered any bids submitted on or before the deadline to submit bids as set forth in the Bidding Procedures.

L.       On or about October 16, 2025, the Debtor on the one hand, and OHM CONCESSION GROUP, LLC (the "**Stalking Horse Bidder**") on the other hand, entered into an asset purchase agreement, for the purchase and sale of substantially all of the tangible assets of the Debtor (as amended, the "**Stalking Horse Agreement**"), subject to higher and better bids and Court approval.

M.       On or about October 28, 2025, the Debtor received an asset purchase agreement from Paradies Lagardere @ ATL GC363, LLC ("**Paradies**"), which served as a Qualifying Bid pursuant to the Bidding Procedures and established the initial bid at the Auction.

N.       On November 4, 2025, the Debtor conducted the Auction, which was administered by the Debtor's counsel and the Debtor's Chief Restructuring Officer. In attendance were also the Debtor's Treasurer, counsel for First Horizon Bank, counsel for the Committee, counsel for and representatives of the City of Atlanta, counsel for and representatives of the Stalking Horse Bidder, and counsel for and representatives of Paradies.

O.       After several rounds of bidding at the Auction, the Successful Bidder was the Stalking Horse Bidder (hereinafter, the "**Purchaser**"). Pursuant to the legally binding offer made by the Purchaser at the Auction, which was accepted by the Debtor after consultation with Committee counsel and subject to Court approval, the Stalking Horse Agreement was modified (as so modified, hereinafter, the "**Agreement**") such that (i) the Purchase Price set forth therein was amended to be $8,250,000.00 plus the cost of the Debtor's inventory, (ii) the Closing Date will be November 14, 2025, and (iii) the Outside Closing Date will be November 21, 2025. The Debtor and the Purchaser have executed an Amended and Restated Asset Purchase Agreement memorializing the Agreement, a copy of which was filed at docket entry no. 305 on November 7, 2025.

P.       At the Auction, the Debtor designated Paradies as the Backup Bidder, whose Qualified Bid was modified to reflect the Purchase Price set forth therein as $8,150,000.00 plus the cost of inventory acquired at closing, plus any applicable breakup fee (the "**Backup Bid**").

Q.       The Agreement, including the form and total consideration to be realized by the Debtor pursuant to the Agreement, (i) is fair and reasonable, (ii) is in the best interests of the Debtor's estate, parties in interest, and other stakeholders, (iii) constitutes full and fair consideration and reasonably equivalent value for the Sale Assets, (iv) was not entered into to hinder, delay, or defraud creditors of the Debtor, and (v) will provide a greater recovery for the Debtor's creditors, shareholders, and other interested parties, as a whole, than would be provided by any other practically available alternative.

R.       The Purchaser is not an "insider" or "affiliate" of the Debtor as those terms are defined in the Bankruptcy Code and the decisions thereunder. The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder and is

entitled to the protections of Section 363(m) and (n) of the Bankruptcy Code with respect to the Agreement and all of the Sale Assets thereunder. The Agreement was proposed, negotiated, and entered in good faith, based upon arm's length bargaining, and without collusion, fraud of any kind, or an improper purpose. Neither the Debtor nor the Purchaser have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of, or implicate, Section 363(n) of the Bankruptcy Code to the Agreement, the Bidding Procedures, the Auction, or to the consummation of the sale transaction and transfer of the Sale Assets to the Purchaser. The Purchaser is purchasing the Sale Assets in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this case and this proceeding in that: (i) the Purchaser complied with the provisions in the Bidding Procedures Order, (ii) all consideration to be paid by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed, (iii) the Purchaser has not violated Section 363(n) of the Bankruptcy Code by any action or inaction, and (iv) the negotiation and execution of the Agreement and any other agreements or instruments related thereto were in good faith.

S.      The Debtor has full corporate power and authority to execute the Agreement (and all other documents contemplated thereby) and consummate the transaction contemplated therein, and the sale of the Sale Assets has been duly and validly authorized by all necessary corporate actions on the part of by the Debtor. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtor to consummate such transactions.

T.      The Debtor has advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Sale Assets, as more fully set forth in

the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtor's business judgment, consistent with the Debtor's duties as a debtor-in-possession, to sell the Sale Assets and to consummate the transactions contemplated by the Agreement. Notwithstanding any requirement for approval or consent by any Person or entity, the transfer of the Sale Assets to the Purchaser is a legal, valid, and effective transfer of the Sale Assets.

U.     The terms and conditions of the Agreement, including the consideration to be realized by the Debtor and the estate pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtor's estate, the Debtor's creditors, and other parties in interest.

V.     In accordance with Sections 105(a) and 363(f) of the Bankruptcy Code, and to the fullest extent available under the Bankruptcy Code or any other applicable law or in equity, the Sale Assets shall be sold free and clear of any and all claims, liens, rights, interests, charges, and encumbrances of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising before or after the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "**Excluded Claims and Liens**"). Thus, consistent with Section 363(f) of the Bankruptcy Code, the Purchaser shall have no liability for any Excluded Claims and Liens.

W.     The transfer of the Sale Assets to the Purchaser will be a legal, valid, and effective transfer of the Sale Assets and shall vest the Purchaser with all rights, title, and interests of the Debtor to the Sale Assets free and clear of any and all Excluded Claims and Liens. Except as

specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Excluded Claims and Liens relating to the Sale Assets being sold by the Debtor.

X.       The transfer of the Sale Assets to the Purchaser free and clear of all Excluded Claims and Liens will not result in any undue burden or prejudice to any holders of any Excluded Claims and Liens, because all such Excluded Claims and Liens of any kind or nature whatsoever shall attach to the net proceeds, if any, of the sale of the Sale Assets received by the Debtor in the same order of their priority, with the same validity, force, and effect which they now have as against the Sale Assets and subject to any claims and defenses the Debtor or other parties may possess with respect thereto. All Persons and entities having Excluded Claims and Liens of any kind or nature whatsoever against or in the Debtor or the Sale Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Excluded Claims and Liens against the Purchaser, any of its assets, property, successors or assigns, or the Sale Assets.

Y.       The Debtor may sell the Sale Assets free and clear of all Excluded Claims and Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Section 363(f) of the Bankruptcy Code has been satisfied. Those holders of Excluded Claims and Liens who did not object to the sale of the Sale Assets and the Sale Motion are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code. Except as set forth herein, all objections to the Sale Motion, if any, have been overruled or resolved.

Z.       Not selling the Sale Assets free and clear of all Excluded Claims and Liens would adversely impact the Debtor's estate, and the sale of Sale Assets other than one free and clear of all Excluded Claims and Liens would be of substantially less value to the Debtor's estate.

AA.       The Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of Section 365 of the Bankruptcy Code, including Subsections 365(b)(1)(A), (B) and

365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Section 365(b)(1)(C) of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtor, its estate, stakeholders, and other parties in interest, and represents the Debtor's exercise of sound and prudent business judgment.

BB.     The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary. The Debtor shall have sole responsibility for paying all costs required to assume and assign the Assumed Contracts to the Purchaser.

CC.     The Purchaser will be acting in good faith, pursuant to Section 363(m) of the Bankruptcy Code, in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rule 6004(h).

DD.     The transactions contemplated under the Agreement do not constitute or amount to a consolidation, merger, or *de facto* merger of Purchaser, its affiliates, or subsidiaries and the Debtor. No substantial continuity between Purchaser, its affiliates, or subsidiaries, and the Debtor exists; no substantial identity of ownership between the Debtor and the Purchaser exists; no continuity of enterprise between the Debtor and Purchaser, its affiliates, or subsidiaries exists; neither Purchaser, its affiliates, nor its subsidiaries are a mere continuation of the Debtor or its estate; and neither Purchaser, its affiliates, nor its subsidiaries constitute a successor to the Debtor or their estate. Except as otherwise set forth in the Agreement, the transfer of the Sale Assets to Purchaser, its affiliates, or subsidiaries will not subject Purchaser, its affiliates, or subsidiaries to any liability for any Excluded Claims and Liens against the Debtor or the Sale Assets existing as

of Closing (as defined in the Agreement) by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust or unfair competition, ERISA, successor, transferee, or vicarious liability.

EE.    The total consideration provided by the Purchaser for the Sale Assets was the highest or best offer received by the Debtor, and the Purchase Price constitutes reasonably equivalent value, fair consideration, and fair value under the Bankruptcy Code and other applicable laws.

FF.    Time is of the essence in consummating the sale. In order to maximize the value of the Sale Assets, it is essential that the sale of the Sale Assets occur within the time constraints set forth in the Agreement. Accordingly, cause exists to lift the stays contemplated by Bankruptcy Rule 6004 and 6006.

GG.    At and effective as of the Closing, the Purchaser shall assume sole responsibility for paying and satisfying the Assumed Liabilities, including all liabilities and obligations of Debtor related to or arising under the Assumed Contracts, but excluding the Cure Costs, which shall be paid by the Debtor with proceeds from the Sale. For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Excluded Claims and Liens) nor in the Agreement shall be construed to mean that the Purchaser is not assuming from the Debtor and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities. After the Closing, the Debtor shall have no liability whatsoever with respect to the Assumed Liabilities. The Purchaser shall have no obligations with respect to any liabilities of the Debtor other than the Assumed Liabilities.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion is GRANTED in its entirety and the Agreement is APPROVED, subject to the terms and conditions contained herein. All objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion (if any) are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is overruled and denied on the merits.

2.    The relief request in the Motion to Assume is GRANTED in its entirety, subject to the terms and conditions contained herein.

3.    The sale of the Sale Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby shall be, and hereby are, authorized and approved in all respects.

4.    The Debtor is hereby authorized to sell the Sale Assets to the Purchaser pursuant to the Agreement.

5.    In the event that the Debtor decides to terminate the Agreement due to the Purchaser's failure to close by the Outside Date set forth in the Agreement, in accordance with the Bidding Procedures Order, the Debtor is authorized to sell the Sale Assets to the Backup Bidder pursuant to the Qualified Bid as modified at the Auction.

6.    The Debtor shall be, and hereby is, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with

implementing and effectuating the terms of the Agreement, this Order, and the sale of the Sale Assets, including, without limitation, certificates, deeds, assignments, and other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Sale Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement, without any further corporate action or orders of this Court.

7.    To the fullest extent permitted by law, effective as of the Closing, the sale of the Sale Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Sale Assets to the Purchaser, notwithstanding any requirement for approval or consent by any person or entity, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Sale Assets, free and clear of all Excluded Claims and Liens of any kind pursuant to Section 363(f) of the Bankruptcy Code, with all such Excluded Claims and Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Sale Assets, subject to all claims and defenses the Debtor or other parties may possess with respect thereto. Following the Closing, no holder of any Excluded Claims and Liens in the Sale Assets shall interfere with the Purchaser's title, use, or enjoyment of the Sale Assets based on or related to such Excluded Claims and Liens or any actions that the Debtor may take in this chapter 11 case, and no person shall take any action to prevent, interfere with, delay, or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

8.    The provisions of this Order authorizing the sale of the Sale Assets free and clear of Excluded Claims and Liens in accordance with Section 363(f) of the Bankruptcy Code shall be

self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Debtor and the Purchaser, and each of their respective officers, employees, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtor or the Purchaser deem necessary, desirable, or appropriate to implement and effectuate the terms of the Agreement and this Order.

9.      A copy of this Order may be filed with the appropriate clerk and/or recorded in the appropriate public records to act to cancel any of the Excluded Claims and Liens.

10.     Subject to the terms of the Agreement, the assumption by the Debtor of the Assumed Contracts and the sale and assignment of such agreements and unexpired leases to the Purchaser, as provided for or contemplated by the Agreement, shall be, and hereby are, authorized and approved under Sections 363 and 365 of the Bankruptcy Code and no further Court approval shall be required for the transfer of such Assumed Contracts in accordance with the terms of the Agreement.

11.     The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and sold and assigned to the Purchaser at the Closing, pursuant to Sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Costs by the Debtor.

12.     Upon the Closing, in accordance with Sections 363 and 365 of the Bankruptcy Code the Purchaser shall be fully and irrevocably vested in all rights, title, and interest in and to each Assigned Contract. The Debtor shall reasonably cooperate with, and take all actions reasonably requested by the Purchaser to effectuate the foregoing.

13.     Pursuant to Sections 365(b)(l)(A) and (B) of the Bankruptcy Code the Debtor, shall pay to the non-debtor parties to any Assumed Contracts the requisite Cure Costs, if any, set forth on Amended Assumed Contracts Schedule attached as **Exhibit 1** to the *Amended Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. 259][3] filed October 22, 2025, except: (i) the Debtor shall hold back and keep in escrow $500,000.00 from the Cure Costs due to the City of Atlanta under the Concourse C and Concourse B/F Leases, subject to resolution of the claims raised by the Committee in the *Objection to Debtor's Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* (Dkt. 250) [Doc. 268] filed October 24, 2025 and as provided by the *Stipulation* [Doc. 307] filed November 9, 2025; (ii) in resolution of the *Objection of Little Green Hen Ventures, LLC to Cure Amount in Debtor's Notice of Potentially Assumed Executory Contracts and Unexpired Leases* [Doc. 267] filed October 24, 2025, the amount of the Cure Costs owed to Little Green Hen Ventures, LLC has been updated and such change was announced on the record at the Sale Hearing and is recited in this Order; and (iii) to the extent that a Cure Cost was amended on the record of the Sale Hearing, agreed to between the non-Debtor party to the Assigned Contract and the Purchaser or hereafter determined by Court order, as the case may be, following the assumption and assignment thereof. The Cure Costs are hereby fixed at the amounts set forth on the Amended Assumed Contracts Schedule, the amounts set forth on the record of the Sale Hearing, as otherwise agreed to by the non-Debtor counterparty to the Assigned Contract and the Purchaser, as recited in this Order, or

---

[3] In addition to the objections discussed in this paragraph, a Limited Objection to *Amended Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [Doc 265] was filed by IHOP Restaurants, LLC and IHOP Franchisor LLC on October 24, 2025.  The latter objection reserved the rights of IHOP Restaurants LLC and IHOP Franchise LLC to (i) consent to any assumption and assignment of the referenced franchise agreement, as amended, and (ii) require adequate assurance of future performance. However, the objection did not dispute the cure amount. The franchise agreement, as amended, with IHOP Restaurants LLC and IHOP Franchise LLC is not an "Assumed Contract" included in the Assumed Contract List in the Agreement.

as hereafter determined by Court Order, as the case may be, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs. For the avoidance of doubt, all counterparties to any of the Debtor's executory contracts or unexpired leases are forever bound by such Cure Costs in the Amended Assumed Contracts Schedule; provided, however, that if a timely objection to such Cure Costs has been or is filed, the Court shall hereafter determine the amount of such Cure Costs. With respect to the Cure Costs payable to the City of Atlanta (except as set forth above), those Cure Costs shall be paid immediately in conjunction with the Closing.

14.    The amount of the Cure Costs owed to Little Green Hen Ventures, LLC is $24,288.08.

15.    Nothing in this Sale Order, the Agreement, or any document related to any of the foregoing, shall be construed to authorize or permit the assumption and assignment of any existing surety bond issued by the Hanover Insurance Company ("**Hanover**") or to obligate Hanover to replace any existing surety bond in connection with any transaction contemplated by this Sale Order, the Agreement, or any document related to any of the foregoing. Further, nothing in this Sale Order, the Agreement, or any document related to any of the foregoing shall be deemed to provide Hanover's consent to the involuntary substitution of any principal under any existing surety bond issued by Hanover. Furthermore, nothing in this Sale Order, the Agreement, or any document related to any of the foregoing shall be deemed to: (i) alter, limit, expand, modify, release, waive, or prejudice any rights, remedies and/or defenses of Hanover under any laws, rules, or regulations and/or any existing surety bond, indemnity agreement, or other related surety agreement; or (ii) alter, limit, expand, modify, prejudice, waive, or release any rights of Hanover in connection with the Debtor and its chapter 11 case or in connection with any non-debtors.

16.    All defaults or other obligations under the Assumed Contracts arising before the Closing shall be paid by the Debtor along with the Cure Costs. For the undisputed Cure Costs and $413,991.78 (subject to final calculation) in undisputed past due obligations owed to the City of Atlanta, those costs will be paid directly to the City of Atlanta at Closing; provided, however, that Purchaser shall be responsible for the payment of any accrued but unbilled obligations with respect to any year-end adjustments or reconciliations when billed in accordance with the terms of the Assumed Contracts that become due and owing after the Closing irrespective of whether such obligations accrued or relate to the period before the Closing with the exception of any unpaid November 2025 rent under the Concourse C and Concourse B/F Leases, but covering a pre-close period, which shall be allocated between the Debtor and Purchaser according to occupation prior to and after closing and will be reconciled with the City of Atlanta on or before December 31, 2025.

17.    Any provision in any Assigned Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Assigned Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assigned Contract shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code, and no assignment of any Assigned Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assigned Contract. The non-debtor party to each

Assigned Contract shall be deemed to have consented to such assignment under Section 365(c)(1)(B) of the Bankruptcy Code, and the Purchaser shall enjoy all of the Debtor's rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

18.     The Purchaser has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assumed Contracts.

19.     The Debtor and its estate shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code. For the avoidance of doubt, any liability for any breach of any of the Assumed Contracts occurring from and after Closing shall be the liability and sole responsibility of Purchaser.

20.     Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Sale Assets before the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtor or their operations or the Sale Assets, or relating to continuing or other conditions existing on or before consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any affiliates or subsidiaries of the Purchaser.

21.     Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities.

22.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing, to operate under any license, permit, approval, certificate of occupancy, authorization, operating permit, registration, plan and the like of any governmental authority relating to the Sale Assets, and all such licenses, permits, approvals, certificates of occupancy, authorizations, operating permits, registrations, plans and the like of any governmental authority are deemed to have been, and hereby are, deemed to be transferred to the Purchaser as of the Closing.

23.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

24.     This Order and the Agreement shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, all creditors and interest holders of the Debtor (whether known or unknown), all federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other Persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any

documents or instruments, or who may be required to report or insure any title in or to the Sale Assets.

25.    To the extent permitted by Section 525 of the Bankruptcy Code, no Governmental Authority may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this chapter 11 case or the consummation of the transactions contemplated by the Agreement.

26.    The Purchaser has not assumed or is otherwise not obligated for the Excluded Liabilities or any other of the Debtor's liabilities, and the Purchaser has not purchased any of the Excluded Assets (as defined in the Agreement). Consequently, all persons, entities, governmental units, and all holders of Excluded Claims and Liens are hereby enjoined from taking any action against the Purchaser, its affiliates, or subsidiaries, or the Sale Assets to recover any Excluded Claims and Liens or on account of any liabilities of the Debtor. All Persons and entities holding or asserting any Excluded Claims and Liens in the Excluded Assets are hereby enjoined from asserting or prosecuting such Excluded Claims and Liens or any cause of action against the Purchaser or the Sale Assets for any liability associated with the Excluded Assets.

27.    Neither the Purchaser nor any of its affiliates shall be deemed to: (a) be a legal successor, or otherwise deemed to be a successor, to the Debtor under any theory of law or equity; (b) have, *de facto* or otherwise, merged with or into the Debtor or its estate; (c) have a common identity or a continuity of enterprise with the Debtor; (d) be an alter ego or a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or any business, enterprise, or operation of the Debtor; or (e) to be liable for any acts or omissions of the Debtor in the conduct of the business or arising under or related to the Sale Assets, other than as set forth in the Agreement. The Purchaser's acquisition of the Sale Assets shall be free and clear

of any "successor liability", vicarious liability, and other types of transferee liability of any kind or nature whatsoever, whether known or unknown as of the Closing, asserted or unasserted, fixed or contingent, liquidated or unliquidated. The operations of the Purchaser and its affiliates shall not be deemed a continuation of the Debtor's business as a result of the acquisition of the Sale Assets.

28.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

29.    The Purchaser and its affiliates shall have no liability, obligation, or responsibility arising from or related to Debtor's failure to comply with the WARN Act (29 U.S.C. 23 §§ 2101 et seq.) or state law equivalents. Except to the extent expressly included in the Assumed Liabilities, Purchaser and its affiliates shall have no liability, obligation, or responsibility under the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

30.    The Purchaser is a good faith purchaser of the Sale Assets as that term is used in Bankruptcy Code section 363(m) and the Purchaser is hereby granted and is entitled to all the protections provided to a good faith purchaser under Section 363(m) of the Bankruptcy Code. Because the Purchaser has acted in good faith under Section 363(m) of the Bankruptcy Code, the reversal or modification of this Order on appeal will not affect the validity of the transfer of the Sale Assets to the Purchaser or any other transactions contemplated by the Agreement or authorized by this Order, unless the same is stayed pending appeal within the applicable period set forth in the Bankruptcy Code and Bankruptcy Rules.

31.    The consideration provided by the Purchaser for the Sale Assets shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the sale of the Sale Assets is not subject to avoidance, and the Purchaser shall not be subject to damages, including any costs, fees, or expenses under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, or any other similar federal or state laws.

32.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing.

33.    The provisions of this Order are non-severable and mutually dependent.

34.    To the extent any provision of this Order conflicts with the terms and conditions of the Agreement, this Order shall govern and control.

35.    The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order.

36.    The Debtor is authorized and required, without further need of any authorization from the Court, to transfer immediately, and in no event later than 10 days, to the Purchaser any cash or receipts received by the Debtor that should have been submitted to or is the property of the Purchaser under the Agreement.

37.    Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be modified, amended, or supplemented and the terms thereof waived by written agreement of the Debtor and the Purchaser, without further action or order of the Court;

provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtor and substantially conforms to, and effectuates, the Agreement and any related agreements and/or instruments and this Order; provided, further, that the Debtor shall provide the Committee with three (3) business days' advance notice of any such modification, amendment, or supplement.

38.     The failure specifically to include any particular provision of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of the Agreement or the provisions thereof, it being the intent of the Court, the Debtor, and the Purchaser that the Agreement and any related agreements and instruments are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order before Closing.

39.     At Closing, the Purchaser shall cause to be delivered an amount equal to the Purchase Price less the Deposit held by the Escrow Agent. A portion of the Purchase Price shall be allocated towards payment of outstanding amounts of:

      a.  rent owed by the Debtor to the Landlord under the existing leases that constitute Assumed Contracts; and

      b.  cure amounts under the Assumed Contracts.

40.     This Court shall retain exclusive jurisdiction to implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, without limitation, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Sale Assets, and all issues and disputes arising in connection with the

relief authorized herein, inclusive of those concerning the transfer of the Sale Assets free and clear of all Excluded Claims and Liens and successor liability and to enforce the injunctions set forth herein.

41.     Within three business days of entry of this Order, the Debtor's counsel shall cause a copy of this Order to be served by first class mail, postage prepaid, on the Limited Service List [Doc. 198] filed August 22, 2025, the counterparties to the Assumed Contracts, and the Purchaser. The Debtor's counsel shall file a certificate of service demonstrating that service has been made in the manner set forth here.

### ### END OF ORDER ###

**Prepared and presented by:**

**KECK LEGAL, LLC**

*/s/ Benjamin R. Keck*
Benjamin R. Keck, Ga. Bar No. 943504
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329
Tel. (470) 826-6020
bkeck@kecklegal.com
***Counsel for the Debtor***

**<u>Distribution List</u>**

Benjamin R. Keck,
2801 Buford Highway NE, Suite 115
Atlanta, GA 30329

Office of the United States Trustee
Attn: Jonathan S. Adams
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303